Craig M. Murphy, Esq.
Nevada Bar No. 4014
craig@nvpilaw.com
MURPHY & MURPHY LAW OFFICES
3900 S. Hualapai Way, Ste 134
Las Vegas, NV 89147
**Mailing Address:**
**4482 Market Street, Ste 407**
**Ventura, CA 93003**
(702) 369-9696 Phone
(702) 369-9630 Fax
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JAMIE MADDEN, individually,<br><br>Plaintiff,<br>vs.<br><br>REVIVE ORGANICS, INC., a Foreign Corporation d/b/a Revive Superfoods; MISKI ORGANICS SUPERFOODS, INC., a Foreign Corporation; DOES 1-10, inclusive; and ROE ENTITIES 1-10, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>Jury Trial Requested |

COMES NOW Plaintiff JAMIE MADDEN (hereinafter "Plaintiff"), by and through her attorneys of record, Craig M. Murphy, Esq., of Murphy & Murphy Law Offices, and William D. Marler, Esq. of Marler Clark, Inc., PS (*pro hac vice* pending), and alleges upon information and belief as follows:

**PARTIES**

1. Plaintiff Jamie Madden resides in Las Vegas, Clark County, Nevada, and is therefore a citizen of the State of Nevada.

2. Plaintiff purchased and consumed a toxic, adulterated, and/or contaminated food

product, namely smoothies, prepared, manufactured, packaged, distributed, and/or sold by Defendant Revive Organics, Inc., d/b/a Revive Superfoods (hereinafter "Revive Superfoods").

3. Defendant Revive Superfoods, a corporation, is incorporated in Canada, with its headquarters and principal place of business located at 2650 Bristol Circle, Suite 500, Oakville, Ontario L6H 6Z7, and is therefore a citizen of a foreign country.

4. Revive Superfoods prepared, manufactured, packaged, distributed, and/or sold a toxic, adulterated, and/or contaminated food product, namely "Revive Superfoods Smoothies" to Plaintiff, with knowledge that its product would be distributed into the interstate marketplace in the United States, including to consumers in the State of Nevada. On information and belief, Revive Superfoods also developed the recipe for the prepared food product that caused Plaintiff's injuries as alleged in this complaint.

5. Defendant Miski Organics Superfoods, Inc., a corporation, (hereinafter "Miski Organics") is incorporated in Canada, with its headquarters and principal place of business located at 70 Ellis Dr., Unit 8, in Barrie, Ontario L4N 8Z3, and is therefore a citizen of a foreign country.

6. Miski Organics "is a proudly (sic) family-owned Canadian company with Peruvian roots," according to statements on its website.[1] Miski Organics is in the business of, among other things, sourcing and importing healthy food products from Peru. The website continues:

> Miski Organics provides nutrient-rich, certified organic, non-GMO, gluten free products to support peoples' (sic) health. Our product line includes Andean Grains and Seeds, Dried Superfruits, Raw Dried Superfoods, Raw Cacao and Derivates – all sustainably grown and cultivated in Peru. By sourcing from local farmers in the coastal valleys, Andean mountains and Amazon region of Peru[.]

7. Miski Organics prepared, manufactured, packaged, imported, distributed and/or sold a toxic, adulterated and/or contaminated food product, namely tara flour, to Defendant Revive

[1] *See* miskiorganics.com.

Superfoods, who utilized the flour to manufacture the toxic, adulterated, and/or contaminated smoothie products that are the subject of this action.

8. At all material times relevant, Miski Organics prepared, manufactured, distributed, and sold food products to a customer base that spans the continent of North America, including, on information and belief, customers in the State of Nevada. Miski's website states as follows: "Our customers include health-conscious consumers, retailers, distributors, and food and beverage companies across North America." Therefore, Miski Organics had a continuous and systematic contact with the State of Nevada through its distribution and sale of food products, including the tara flour product that is the subject of this lawsuit, to customers in the State, and, as such, is subject to the jurisdiction of this Court.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs; because the matter is between a citizen of Nevada, the Plaintiff, and two defendant foreign corporations; and because the Defendants have certain minimum contacts with the State of Nevada such that maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

10. Venue in the United States District Court for the District of Nevada is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims and causes of action occurred in this judicial district, and because the Defendants are subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## GENERAL ALLEGATIONS

11. Defendant Revive Superfoods was founded in 2018 and is one of the largest direct-

to-consumer food brands that operate in the United States.

12. Revive Superfoods's self-described mission is to "provide accessible superfoods that are sustainably sourced without compromising taste and price".[2]

13. Revive Superfoods' products are marketed (quoting from its own website) as "chef-crafted super meals that are cost-effective and ready-to-eat in minutes." The product recipes include "pre-portioned, flavorful superfood smoothies, meals, oats, soups, and falafel pops."[3]

14. Revive Superfoods purports to "use simple, honest ingredients that are flash-frozen at peak nutrition and are available in convenient on-the-go cups".[4]

15. Revive Superfoods is subscription-based and offers monthly and weekly plans that allow customers to order their choice of pre-portioned items from a set menu of options. Customers can build their own custom box and select 9, 12, or 24 cups per week or 12 or 24 cups per month.[5]

16. On information and belief, in addition to the Plaintiff, numerous people across the United States have developed an illness syndrome identical or substantially like the Plaintiff's after consuming Defendant Revive Superfoods' Smoothies.

17. On information and belief, these people have no shared exposures other than the consumption of the Revive Superfoods Smoothies.

18. On information and belief, all the people who fell ill after consuming Revive Superfoods Smoothies, including the Plaintiff, consumed Revive Superfoods' Mango & Pineapple Smoothie.

19. The ingredients used in Revive Superfoods' Mango & Pineapple Smoothie are:[6]

- Mango

---

[2] Revive Foods, *Our Story*, https://revivesuperfoods.com/about/ *(Last accessed July 21, 2022).*

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] Revive Foods, Smoothies, https://revivesuperfoods.com/about/ (Accessed July 4, 2022).

- Banana
- Mango Powder
- Camu Camu
- Pineapple
- Tara Protein
- Lime Extract

20. According to the U.S. Food and Drug Administration, on June 19, 2022, Daily Harvest Inc., a direct-to-consumer food brand like Defendant Revive Superfoods, voluntarily recalled approximately 28,000 units of their French Lentil + Leek Crumbles product produced between April 28 and June 17, 2022.

21. The recall followed more than 470 instances of consumers experiencing illness or adverse reactions after consumption of the French Lentil + Leek Crumbles. The illnesses reported by the consumers of the Daily Harvest French Lentil + Leek Crumbles were similar to those reported by persons who fell ill after consuming Defendant Revive Superfoods' Smoothies.

22. The ingredients used in Daily Harvest's French Lentil + Leek Crumbles are[7]:

- French Lentil
- Butternut Squash
- Hemp Seed
- Quinoa
- Cremini
- Tara Protein

23. The only common ingredient between the Daily Harvest's French Lentil + Leek Crumbles and Defendant Revive Superfoods' Mango & Pineapple Smoothie, both which caused

[7] Daily Harvest, https://www.daily-harvest.com/ (Accessed July 3, 2022).

similar gastrointestinal complications, is tara. Tara is a shrub or tree from Peru used by Daily Harvest and Defendant Revive Superfoods as a plant-based source of protein in their respective French Lentil + Leek Crumbles and Mango & Pineapple Smoothie products.

24. On July 19, 2022, Daily Harvest issued a communication to its customers advising that, following their internal investigations, they identified tara as the cause of the illnesses linked to their French Lentil + Leek Crumbles product.

25. On information and belief, the only product by Defendant Revive Superfoods that contained tara flour was the Mango & Pineapple Smoothie.

26. Revive Superfoods has since discontinued the sale of its Mango & Pineapple Smoothies and discontinued the sale of only this specific product. Unlike Daily Harvest, however, Revive Superfoods never recalled its contaminated Mango & Pineapple Smoothies.

**Plaintiff Carly Lucero's Injuries**

27. Plaintiff ordered Defendant Revive's Mango and Pineapple smoothie on March 25, 2022.

28. Plaintiff subsequently consumed the Mango and Pineapple smoothie after receiving it and on or about April 10, 2022 began to feel abnormal with symptoms including abdominal pain, dark urine, and chest pain.

29. Plaintiff presented to the Emergency Room on April 16, 2022 with complaints of abdominal pain for the past week, dark urine, and chest pain.

30. Blood work revealed elevations in liver enzymes and an abdominal CT Scan revealed an enlarged liver. She was admitted for further evaluation and management.

31. Plaintiff's tentative diagnosis was sepsis and she was started on broad spectrum antibiotics. Further workup did not identify any source of an infection and antibiotics were discontinued. She was discharged home on April 18, 2022.

32. Plaintiff present to the Emergency Room again on April 22, 2022 with unrelenting abdominal pain.

33. Multiple imaging studies were obtained which showed an enlarged liver, and a needle sample of abdominal fluid was obtained for analysis for possible infection, which resulted negative.

34. Plaintiff's liver enzymes remained significantly elevated. Hepatology consultants suspected alcoholic hepatitis given Plaintiff's history of moderate alcohol consumption, but workup for chronic liver disease was otherwise negative.

35. Plaintiff remained hospitalized for five days where she was treated with steroids and pain medication.

36. Plaintiff was discharged home on May 4, 2022 in improved condition and a plan for close follow up with outpatient hepatology.

37. Plaintiff continued to suffer aftereffects of this illness for several months, and required treatment from general physicians and specialists.

## CAUSES OF ACTION

### Count I – Strict Products Liability

38. Plaintiff incorporates by reference, and makes a part of this count, each foregoing paragraph of this Complaint.

39. At all times relevant hereto, the Defendants prepared, manufactured, packaged, distributed, and/or sold the subject contaminated food product that was purchased and consumed by Plaintiff.

40. The toxic and/or otherwise contaminated food product that the Defendants prepared, manufactured, packaged, distributed, and/or sold was, at the time it left the Defendants' control, defective and unreasonably dangerous for its ordinary and expected use by the intended public, including Plaintiff, because Defendants' product was contaminated by a substance injurious to human health.

41. The toxic and/or otherwise contaminated food product that the Defendants prepared, manufactured, packaged, distributed, and/or sold was delivered to the Plaintiff without any change in its defective condition. The toxic and/or otherwise contaminated food product that the Defendants prepared, manufactured, packaged, distributed, and/or sold was used by Plaintiff in the manner expected and intended.

42. The subject food product was expected to reach the consumers, including Plaintiff, and be consumed by them, without substantial change. The consumers, including Plaintiff, used the food product in the manner expected and intended, including when they consumed them.

43. Because the food that Plaintiff purchased and consumed was adulterated, the Defendant is strictly liable to Plaintiff for the harm proximately caused to the Plaintiff by its manufacture and sale of contaminated and adulterated food products.

44. As a direct and proximate result of the defective and unreasonably dangerous condition of the contaminated food product that the Defendants prepared, manufactured, packaged, distributed and/or sold, as set forth above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

**Count II - Negligence**

45. Plaintiff incorporates by reference, and makes a part of this count, each foregoing paragraph of this Complaint.

46. The Defendants owed to Plaintiff a duty to use reasonable care in the preparation, manufacture, packaging, distribution, and/or sale of their food product, the observance of which duty would have prevented or eliminated the risk that Defendants' food product would be toxic and/or otherwise become contaminated with any dangerous pathogen. Defendants, however, breached this duty and were therefore negligent.

47. The Defendants had a duty to comply with all federal, state, and local statutes, laws, regulations, safety codes, and provisions pertaining to the preparation, manufacture, distribution, storage, and sale of its food product, but failed to do so, and was therefore negligent. Plaintiff was among the class of persons designed to be protected by these statutes, laws, regulations, safety codes and provisions pertaining to the preparation, manufacture, packaging, distribution, and sale

of similar food products. Defendants, however, breached this duty and were therefore negligent.

48. The Defendants had a duty to properly supervise, train, and monitor their respective employees, and to ensure that their respective employees complied with all applicable statutes, laws, regulations, safety codes, and provisions pertaining to the preparation, manufacture, distribution, packaging, and sale of similar food products. Defendants, however, breached this duty and were therefore negligent.

49. The Defendants had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, and free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances, regulations, codes, and provisions and that were clean, free from adulteration, and safe for human consumption. Defendants, however, breached this duty and were therefore negligent.

50. As a direct and proximate result of Defendants' negligence as described above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

**Count III – Negligence *Per Se***

51. Plaintiff incorporates by reference, and makes a part of this count, each foregoing paragraph of this Complaint.

52. The Defendants had a duty to comply with all statutory and regulatory provisions that pertained or applied to the manufacture, distribution, storage, labeling, and sale of the food products that injured Plaintiff, including the applicable provisions of the Federal Food, Drug and Cosmetic Act, and similar Nevada public health laws, all of which prohibit the sale of any food that is adulterated or otherwise injurious to health.

53. In breach of this duty, the Defendants failed to comply with the provisions of the health and safety acts identified above and, as a result, were negligent *per se* in their manufacture, distribution, packaging, and/or sale of adulterated food.

54. As a direct and proximate result of conduct by the Defendants that was negligent *per se*, Plaintiff sustained injuries and damages in an amount to be determined at trial.

**Count IV - Breach of Warranty**

55. Plaintiff incorporates by reference, and makes a part of this count, each foregoing

paragraph of this Complaint.

56. The Defendants are liable to Plaintiff for breaching express and implied warranties that they made regarding their food product that Plaintiff purchased and consumed. These express and implied warranties include the implied warranties of merchantability and/or fitness for a particular use. Specifically, the Defendants expressly warranted, through their sale of food to the public and by the statements and conduct of their employees and agents, that the food they prepared, manufactured, packaged, distributed and/or sold was fit for human consumption and not otherwise toxic, adulterated, contaminated, or injurious to health.

57. The toxic, adulterated, and/or otherwise contaminated food that the Defendants sold to Plaintiff would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

58. The toxic and/or otherwise contaminated food sold to Plaintiff was not fit for the uses and purposes intended, i.e., human consumption; thus, the sale of this product to Plaintiff constituted a breach of the implied warranty of fitness for its intended use.

59. As a direct and proximate cause of the Defendants' breach of warranties, as set forth above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

## DAMAGES

60. Plaintiff has suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of the Defendants, in an amount which shall be fully proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; past medical and medical-related expenses; future medical and medical-related expenses; travel and travel-related expenses, both past and future; lost wages; emotional distress, past and future; pharmaceutical expenses, past and future; and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

a. For all of Plaintiff's economic damages, including all past and future medical expenses, as determined at the time of trial;

b. For all of Plaintiff's non-economic damages, as determined at the time of trial;

c. That the Court award Plaintiff the opportunity to amend or modify the provisions of this complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

d. That the Court award all such other and further relief as it deems necessary and proper in the circumstances.

**JURY TRIAL DEMANDED**

Dated: April 5, 2024

MURPHY & MURPHY LAW OFFICES

Craig Murphy, Esq.
Nevada Bar No. 4014
3900 S. Hualapai Way, Ste 134
Las Vegas, Nevada 89147
**Mailing Address:**
**4482 Market Street, Ste 407**
**Ventura, CA 93003**
(702) 369-9696 Phone
(702) 369-9630 Fax
Attorney for Plaintiff

MARLER CLARK, INC., P.S.

/s/ *William D. Marler, Esq.*

WILLIAM D. MARLER, WSBA #17233
Attorney for Plaintiff
bmarler@marlerclark.com
(*to be admitted pro hac vice*)
1012 1st Avenue, Fifth Floor
Seattle, Washington 98104
(206) 346-1888 Phone